**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JORGE LINARES,

                                                    Plaintiff,

              - v -                                                    Civ. No. 9:05-CV-625
                                                                                    (GLS/RFT)

DAVID MAHUNIK; JOHN BURGE; and KENNETH
MCLAUGHLIN,

                                                    Defendants.

**APPEARANCES:**                                              **OF COUNSEL:**

JORGE LINARES
Plaintiff, *Pro Se*
96-A-3483
Bare Hill Correctional Facility
Caller Box 20
181 Brand Road
Malone, NY 12953

HON. ELIOT SPITZER                                          MARIA MORAN, ESQ.
Attorney General for the State of New York          Assistant Attorney General
Attorney for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                        <u>**REPORT-RECOMMENDATION and ORDER**</u>

          *Pro se* Plaintiff Jorge Linares brings a civil action pursuant to 42 U.S.C. § 1983, alleging

denial of his right to participate in a religious service, denial of access to the law library, and

retaliation, all in violation of the First Amendment, as well as failure to supervise and failure to

investigate.  Dkt. No. 9, Am. Compl.; Dkt. No. 23, Pl.'s Mem. of Law at pp. 1-7.  Defendants David

Mahunik, Corrections Officer ("C.O.") at Auburn Correctional Facility ("Auburn"), John Burge,

Superintendent at Auburn, and Kenneth McLaughlin, Director of Operations at the Inspector General's Office, bring this Motion to Dismiss.  Dkt. No. 22.  Plaintiff opposes the Motion.  Dkt. No. 1.[1]  For the reasons to follow, it is recommended that the Motion to Dismiss be **granted in part and denied in part**.

## I.  FACTS[2]

The following facts are derived from the Amended Complaint, which, on a motion to dismiss, must be taken as true.  *See infra* Part II.A.  Plaintiff arrived at the Auburn Correctional Facility on August 24, 2004.  Am. Compl. at § II.  During November and December 2004, Plaintiff's cell was searched numerous times and no contraband was found.  *Id.* at p. 4.  On January 19, 2005,[3] Plaintiff's cell was searched once again and his cell was left in disarray with his criminal case papers placed on his bed.  *Id.*

On January 21, 2005, Plaintiff was singled out for a pat frisk and was surrounded by twelve (12) officers and two (2) sergeants.  *Id.*  During the frisk, Plaintiff's criminal case was discussed by one of the sergeants.  *Id.*  Defendant Mahunik was present at the incident.  *Id.*  Plaintiff reported the incident to a civilian staff member who in turn relayed the information regarding the incident to the Deputy Superintendent.  *Id.*  Plaintiff was told that the harassment would cease and that he should not file a grievance.  *Id.* at pp. 4-5.  Even though no grievance was filed, Plaintiff continued to be

---

[1] Although Plaintiff's Response to the Motion was untimely when submitted on February 15, 2006, because it was due on January 17, 2006, this Court, nevertheless, reviewed the Response and has accepted it for filing.  *See* Dkt. Nos. 22 & 23.

[2] The Court notes that Plaintiff did not set forth each allegation in separately numbered paragraphs.  *See* Am. Compl. at § II.

[3] Although Plaintiff provides a date of January 19, 2004, for this incident, Plaintiff did not arrive at Auburn until August of 2004 and therefore, the year 2005 will be reflected for the events described by Plaintiff subsequent to and including this incident.

harassed by Mahunik.  *Id.* at p. 5.

On April 16, 2005, Plaintiff was attending a Catholic Choir callout when Defendant Mahunik abruptly cancelled the callout.  *Id.*  Then, on April 17, 2005, Plaintiff was supposed to attend a callout for the law library but was denied entry by Mahunik.  *Id.*  That same afternoon, Mahunik, along with Sergeant Gardner and Officer Banks, arrived at Plaintiff's cell and ordered him to submit to a pat frisk.  *Id.*  During that time, Mahunik entered Plaintiff's cell and placed a weapon inside the cell.  *Id.*  Mahunik proceeded to announce that he had found the weapon and that he had previously been provided information by an informant that a weapon would be found in Plaintiff's cell.  *Id.*  Plaintiff's cell was searched once again and a body cavity search was performed on Plaintiff.  *Id.*  No other contraband was found.  *Id.*

On April 18, 2005, a misbehavior report was filed against Plaintiff for violation of the rule against possessing weapons.  *Id.* at p. 6.  Plaintiff was assigned an assistant but the assistant failed to interview the requested witnesses and obtain copies of the paperwork Plaintiff requested.  *Id.*  Plaintiff refused to sign the form that the assistant had completed his duties.  *Id.*  On April 21, 2005, a Superintendent's Hearing was held in regards to the rule violation.  *Id.*  Plaintiff pled not guilty and explained to the hearing officer that Mahunik had placed the weapon in his cell.  *Id.*  Plaintiff also sought to have several witnesses testify as to the harassment by Mahunik against Plaintiff.  *Id.*  After six people had testified, on April 28, 2005, Plaintiff was found not guilty.  *Id.* at pp. 6-7.  The reasoning given by the hearing officer was that there was "prior antipathy" between Mahunik and Plaintiff "as exemplified by the canceling of Catholic Choir callout . . . on 4/16/05 and denial of [Plaintiff's] entrance to the law library per callout on . . . 4/17/05."  *Id.* at p. 7.  Additionally, the hearing officer stated that there were credibility issues with the confidential informant.  *Id.*

On April 27, 2005, Mahunik returned to Plaintiff's cell and announced that he believed another knife was in the cell.  *Id.*  Because of the events that had occurred, Plaintiff filed two grievances, one for intentionally placing a weapon in his cell and another for threatening to place another weapon in the cell.  On May 3, 2005, Plaintiff was approached by Mahunik who informed Plaintiff that he should not attend his law library callout and that he should cease filing grievances against him, otherwise there would be consequences.  *Id.* at pp. 7-8.  The same day, Plaintiff submitted a complaint to the Deputy Superintendent of Programs Ronald Nelson regarding Mahunik.  *Id.* at p. 8.  That complaint is being investigated.  *Id.*

On April 29, 2005, Superintendent Burge rendered his decision on Plaintiff's first grievance and found that there was no evidence to support the allegations and there was no merit to Plaintiff's complaint.  *Id.*  Plaintiff received this response on May 3, 2005, and on the same day filed an appeal to the Central Office Review Committee ("CORC") attaching the decision from Plaintiff's hearing to the CORC.  *Id.*  Burge rendered his decision as to the second grievance on May 5, 2005, and again stated there was no evidence to support the allegations.  *Id.*  Plaintiff appealed the decision to the CORC on May 16, 2005.  *Id.*

In addition to filing the complaint and grievances, Plaintiff filed another complaint with the Inspector General's Office.  *Id.* at pp. 8-9.  The first letter sent by Plaintiff was on April 21, 2005, with a follow up letter sent on May 5, 2005.  *Id.* at p. 9.  Defendant McLaughlin is the Director of Operations at the Inspector General's Office.  *Id.*  By memorandum, McLaughlin referred the complaint to Defendant Burge, thus, no independent investigation was conducted by the Inspector General's Office.[4]  *Id.*

_____

[4] At this juncture, the results of the referral to Defendant Burge are unknown.

On May 16, 2005, Plaintiff received a response to the complaint filed with Ronald Nelson by

Captain Gummerson.  *Id.*  The response stated that Mahunik was interviewed and denied the

allegation.  *Id.*  Plaintiff was further told to relay any concerns to Lieutenant Easterbrock.  *Id.*  On

May 14 and 16, 2005, Plaintiff continued to be harassed by Mahunik.  *Id.*

## II.  DISCUSSION

### A.  Motion to Dismiss Standard

Upon a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), a court may dismiss a

complaint "only if 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of

his claim which would entitle him to relief.'"  *Equal Employment Opportunity Comm'n v. Staten*

*Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957) & citing *Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 171 (2d Cir. 1998)); *see also Green v.*

*New York State Dep't of Corr. Serv. et al.*, 2003 WL 22169779, at *1 (N.D.N.Y. Aug. 27, 2003).

Furthermore, "the court must accept as true the factual allegations in the complaint, and draw all

reasonable inferences in favor of the plaintiff."  *Harris v. City of New York*, 186 F.3d 243, 247 (2d

Cir. 1999); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)

(citations omitted).  However, the court need not credit conclusory statements unsupported by

assertions of facts or legal conclusions and characterizations presented as factual allegations.

*Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Nevertheless, "[i]n assessing the legal sufficiency of a

claim [under 12(b)(6)], the court may consider those facts alleged in the complaint, documents

attached as an exhibit thereto or incorporated by reference . . . and documents that are integral to

plaintiff's claims, even if not explicitly incorporated by reference."  *Green*, 2003 WL 22169779, at

*1 (internal quotation marks and citations omitted) (alterations in original).

Moreover, pleadings submitted by *pro se* litigants "should be 'construed liberally,'" and a complaint "should not be dismissed unless 'it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations.'" *Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (internal citations omitted). A "dismissal on the pleadings is *never* warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." *Id.* at 128.

### B.  Non-Compliance with Federal Rules of Civil Procedure

Defendants assert that Plaintiff's Amended Complaint fails to comply with FED. R. CIV. P. 8 and 10.  Dkt. No. 22, Defs.' Mem. of Law at pp. 2-3.

FED. R. CIV. P. 8(a) states in part that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  FED. R. CIV. P. 8(a)(2).  This Rule also requires that "[e]ach averment of a pleading shall be simple, concise, and direct."  FED. R. CIV. P. 8(e).  Thus, "[u]nder the Rules' liberal pleading standards, a plaintiff must disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'"  *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

If a complaint fails to comply with the requirements set forth under FED. R. CIV. P. 8, a district court has the power, either by motion or *sua sponte*, "to dismiss the complaint or to strike such parts as are redundant or immaterial."  *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).  Dismissal of a plaintiff's complaint should only be "reserved for those cases in which the complaint is so confused, ambiguous, vague,

or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d at 42 (citation omitted).  While the mere fact that a plaintiff is proceeding *pro se* should not inhibit a court from dismissing a complaint under this Rule if warranted, *Jones v. Ocwen Fed. Bank*, 147 F. Supp. 2d 219, 223-24 (S.D.N.Y. 2001) (citing *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir. 1995)), it is generally accepted that pleadings drafted by *pro ses* are not held to the same standards as those drafted by counsel and, as a matter of policy, *pro se* pleadings are to construed liberally with a "lenient eye," *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Fleming v. Untied States*, 146 F.3d 88, 90 (2d Cir. 1998); *Boddie v. Schneider*, 105 F.3d 857, 860 (2d Cir. 1997).

Additionally, if a court dismisses a plaintiff's complaint under this Rule, the court should generally afford plaintiff an opportunity to amend the complaint, especially "when the complaint states a claim that is on its face nonfrivolous." *Simmons v. Abruzzo*, 49 F.3d at 87.  It is within the court's discretion whether to grant or deny leave to amend but the court must adhere to the standard set forth under FED. R. CIV. P. 15(a).  *Salahuddin v. Cuomo*, 861 F.2d at 42.  Nevertheless, a court may "dismiss a prolix complaint without leave to amend in extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible[.]" *Id.* (citations omitted).

Furthermore, FED. R. CIV. P. 10 states in part that "[a]ll averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances[.] . . . Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth." FED. R. CIV. P. 10(b).  The intent of this Rule is so that one can easily identify numbered paragraphs by which to

make reference from the pleading.  *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (citation

omitted).  If the complaint does not conform to the requirements set forth within FED. R. CIV. P. 10,

it "presents [a] far too . . . heavy burden in terms of defendants' duty to shape a comprehensive

defense and provides no meaningful basis for the Court to assess the sufficiency of a plaintiff's

claims, and may properly be dismissed by the Court."  *Id.* (quoting *Gonzales v. Wing* 167 F.R.D.

352, 355 (N.D.N.Y. 1996)).

In this case, Plaintiff filed his Original Complaint on May 23, 2005, and amended his

Complaint as of right on August 10, 2005.  Dkt. Nos. 1 & 9.  Instead of submitting an answer,

Defendants brought this Motion to Dismiss on December 8, 2005.[5]  Dkt. No. 22.  Within this

Motion, Defendants assert that dismissal of the Amended Complaint is warranted due to the fact

that Plaintiff has failed to comply with FED. R. CIV. P. 8 & 10.  Defs.' Mem. of Law at pp. 2-3.

Plaintiff, when submitting his Amended Complaint, utilized a form typically given to

prisoners who wish to file a complaint under 42 U.S.C. § 1983.  Am. Compl.  Section II of the form

asks plaintiffs to submit a "Statement of Claim."  An explanation is provided as to what should be

contained within this section:

> State here as briefly as possible the *facts* of your case.  Describe how each defendant is
> involved.  Also include the names of any other persons involved, dates and places of
> events. You may cite Constitutional Amendments you alleged were violated, but do not
> give any legal arguments or cite any cases or statutes.  If you intend to allege a number
> of related claims, number and set forth each claim in a separate paragraph.  Use as much
> space as you need.  (Attach additional sheet if necessary).

*Id.* at § II (emphasis in original).

---

[5] Upon the filing of the Amended Complaint, Defendants' sought an extension of time to answer.  Dkt. Nos. 13, Defs.' Lt., dated Oct. 26, 2005, & 17, Defs.' Lt., dated Nov. 15, 2005.  Defendants were granted an extension and were directed to file their answer by December 9, 2005, thus, the filing of the Motion to Dismiss was timely.  Dkt. Nos. 14, Order, dated Oct. 27, 2005, & 18, Order, dated Nov. 16, 2005.

Plaintiff's "Statement of Claim" consists of approximately six pages of narrative as to events of which Plaintiff complains. *Id.* Although Plaintiff includes numerous paragraphs within this Section, they are not numbered and each paragraph includes several sentences. *Id.*

Nevertheless, the events described are clear enough that the nature of Plaintiff's claims can be deciphered. *Id.* The Second Circuit has held that a plaintiff's complaint should not be dismissed unless "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d at 42. This is not the case here. Read liberally, Plaintiff's Amended Complaint alleges several causes of action. *See supra* Part I. Plaintiff's failure to number his paragraphs amounts to nothing more than a technical but harmless violation of the Federal Rules, and thus, absent any prejudice to Defendants, is an improper basis for dismissal. *Phillips v. Girdich*, 408 F.3d 124, 125 & 128 (2d Cir. 2005) (holding that harmless violations of the Federal Rules of Civil Procedure pleading requirements, especially Rule 10, should be excused since such technical pleading irregularities "neither undermine the purpose of notice pleading nor prejudice the adverse party").

Thus, it is recommended that Defendants' Motion to Dismiss be **denied** for failing to comply with the Federal Rules.

### C.  Eleventh Amendment

Plaintiff brings suit against all Defendants in both their individual and official capacities. *See* Am. Compl. Plaintiff seeks monetary damages against these Defendants in their individual and official capacities. *Id.* at § III. Defendants state that the Eleventh Amendment bars suit against the Defendants for monetary damages in their official capacities. Defs.' Mem. of Law at p. 2.

The Eleventh Amendment states "[t]he Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the United

States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST.

amend. XI.  The Eleventh Amendment bars a suit against the state in federal court unless the state

consents to being sued or Congress legislatively overrides a state's immunity.  *Huang v. Johnson*,

251 F.3d 65, 69 (2d Cir. 2000).  The state's immunity extends to state officials "act[ing] on behalf

of the state" when the state is the "real, substantial party in interest."  *Id.* at 69-70 (citing *Puerto*

*Rico Aqueduct & Sewer Auth. v. Metcalf & Eddie, Inc.*, 506 U.S. 139, 142-47 (1993) & quoting

*Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984)).  Moreover, the

Eleventh Amendment will bar recovery for money damages in a suit "against state officials in their

official capacities."  *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003).

Therefore, Defendants cannot be sued in their official capacities in a claim for money

damages.  However, Linares may seek damages from Defendants in their individual capacities.

### D.  First Amendment Claims

**1.  Religious Service**

Plaintiff claims that his callout to attend the Catholic Choir was cancelled by Defendant

Mahunik on April 16, 2005.  Am. Compl. at pp. 5 & 7; Pl.'s Mem. of Law at p. 2.

Prisoners have a constitutional right to participate in congregate religious services.  *Young v.*

*Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989).  Although a prisoner does retain this right, it is not

absolute.  Thus, "a threshold question is whether the alleged state action in question substantially

burdens that right."  *Wagnoon v. Gatson*, 2001 WL 709276, at * 7 (S.D.N.Y. June 25, 2001) (citing

*Gill v. DeFrank,* 2000 WL 897152, at *1 (S.D.N.Y. July 6, 2000); *Troy v. Kuhlman,* 1999 WL

825622, at *15 (S.D.N.Y. Oct. 15, 1999); & *Boomer v. Irvin,* 963 F. Supp. 227, 231

(W.D.N.Y.1997)).  "A substantial burden constitutes more than a mere inconvenience, but rather

involves, for example, a situation where an adherent is forced to modify his behavior and violate his

beliefs."  *Id.* (citing *Gill v. DeFrank,* 2000 WL 897152, at *1).

Courts in this Circuit have held, and the Second Circuit has affirmed, that "missing one

religious service does not constitute a substantial burden on an inmate's right to the free exercise of

his religion."  *Gill v. Defrank*, 2000 WL 897152, at * 2, *aff'd* 8 Fed Appx. 35 (2d Cir. Apr. 16,

2001); *see also Wagnoon v. Gatson*, 2001 WL 709276, at * 8 (dismissing the free exercise claim on

a motion to dismiss); *Troy v. Kuhlmann*, 1999 WL 825622, at * 15; *Boomer v. Irvin*, 963 F. Supp. at

230-31.

In this case, Plaintiff had a callout to attend Catholic Choir.  Am. Compl. at pp. 5 & 7; Pl.'s

Mem. of Law at p. 2.  It is not clear whether such was an actual religious service or ancillary to a

religious service, such as choir practice.  In any event, even if it were to constitute a religious

service, cancellation of his callout to attend the Catholic Choir occurred only one time.  Thus, as this

is not considered to be a substantial burden, the claim must fail.

Therefore, it is recommended that the Motion to Dismiss be **granted** on the religious service

claim.

## 2.  Law Library Access

Plaintiff claims that on April 17, 2005, Defendant Mahunik prevented him from attending

his law library callout.  Am. Compl. at pp. 5 & 7; Pl.'s Mem. of Law at p. 3.

Under the First Amendment, "prisoners have a constitutional right of access to the courts."

*Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004).

This right "requires prison authorities to assist inmates in the preparation and filing of meaningful

*-11-*

legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. at 828; *Bourdon v. Loughren*, 386 F.3d at 92 (quoting *Bounds*).  However, there is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  The Supreme Court held that in order to fulfill the actual injury requirement, derived from the constitutional doctrine of standing, on a law library claim where there is a lack of access to the courts, the inmate must be pursuing direct appeals from the conviction for which he or she was incarcerated, a *habeas corpus* petition, or a civil rights claim pursuant to § 1983 "to vindicate basic constitutional rights." *Lewis v. Casey*, 518 U.S. at 354.  Thus, to prove an actual injury, a plaintiff "must show that a non-frivolous legal claim was frustrated or impeded due to the actions of prison officials." *Murray v. Michael*, 2005 WL 2204985, at *16 (N.D.N.Y. Sept. 7, 2005) (citing *Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998)); *see also Ramirez v. Holmes*, 921 F. Supp. 204, 207 (S.D.N.Y. 1996) (stating that if a plaintiff alleges he was actually denied access to the law library, the plaintiff "must allege that the deprivation proximately caused some prejudice or denial of a legal claim" (citations omitted)).

In addition, under a First Amendment challenge on a law library claim, "[a] delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Odom v. Poirier*, 2004 WL 2884409, at *8 (S.D.N.Y. Dec. 10, 2004) (quoting *Herrera v. Scully*, 815 F. Supp. 713, 725 (S.D.N.Y. 1993) & citing *Jones v. Smith,* 784 F.2d 149, 151-52 (2d Cir. 1986)).

Here, Plaintiff, in his Amended Complaint, claims he was prevented from using the law

*-12-*

library on his callout by Defendant Mahunik on one solitary occasion.  However, Plaintiff has not alleged how any non-frivolous legal claims he may have been pursuing were frustrated or impeded due to the actions of Defendant Mahunik nor has he shown how he would be prejudiced in any way from not having access to the law library on that particular day.  Furthermore, Plaintiff does not assert that he was in fact pursuing or intending to initiate any type of legal claim on the date Plaintiff states he was denied access to the law library.  Even if there was malicious intent by Defendant Mahunik when he prevented Plaintiff from accessing the law library, Plaintiff cannot show he was prejudiced.  *Ramirez v. Holmes*, 921 F. Supp. at 207 (citing *Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995) for the proposition that the complaint was dismissed "where allegations did not show how denial of access, even if done deliberately and maliciously, 'materially prejudiced a pending legal action or one that [the plaintiff] sought to file in the courts'" (alteration in original) & *Derrick v. Melendez*, 1992 WL 373474 (S.D.N.Y. Dec. 2, 1992) for a similar notion in that a complaint was dismissed even though there were allegations of a retaliatory motive because there was no "mention of prejudice from isolated incident denying plaintiff use of legal text").  Thus, Plaintiff's access to the law library claim cannot stand as he has failed to show an "actual injury." *Id.* (dismissing the complaint on a motion to dismiss where the court found that a single incident of denial of use of the prison law library did not violate constitutional rights and plaintiff had not alleged any prejudice resulting from the one incident).  Moreover, this one-time denial could be viewed as a mere delay.  This delay does not rise to the level of a constitutional violation.

Therefore, it is recommended that the Motion to Dismiss be **granted** as to the law library claim.

**3.  Retaliation**

Plaintiff claims that he was retaliated against by Defendant Mahunik for filing two

grievances.  Am. Compl. at pp. 5-8; Pl.'s Mem. of Law at pp. 3-4.

The Second Circuit has stated that courts must approach prisoner retaliation claims "with

skepticism and particular care," since "virtually any adverse action taken against a prisoner by a

prison official - even those otherwise not rising to the level of a constitutional violation - can be

characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491

(2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)

(citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590

(2d Cir. 1988)).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he

engaged in constitutionally protected conduct and, second, that the conduct was a substantial or

motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133,

137 (2d Cir. 2003) (citations omitted).  There must also be a "causal connection between the

protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)

(citation omitted).

A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting

circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need

for direct evidence. *Bennett v. Goord*, 343 F.3d at 138-39 (holding that plaintiff met his burden in

proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal

proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary

charges on appeal as unfounded).  Other factors that can infer an improper or retaliatory motive

*-14-*

include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff. *McEachin v. Selsky*, 2005 WL 2128851, at *5 (N.D.N.Y. Aug. 30, 2005) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)).

Moreover, in terms of what constitutes an adverse action, "in the prison context [the Second Circuit has] previously defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)) (emphasis in original). This objective test will apply even though a particular plaintiff was not himself deterred. *Id.* If the plaintiff can carry that burden, the defendants may still defeat the claim if they can show, by a preponderance of the evidence, that they would have taken the same action in the absence of the prisoner's First Amendment activity. *Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999); *see Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994); *Wheeler v. Goord*, 2005 WL 2180451, at *9 (N.D.N.Y. Aug. 29, 2005).

The Supreme Court has noted that the right to petition government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *See United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). In this respect, the Second Circuit has held that within the prison context, "inmates must be 'permit[ted] free and uninhibited access . . . to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers.'" *Franco v. Kelly*, 854 F.2d at 589 (quoting *Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir. 1976)) (emphasis and alterations in original).

Here, Plaintiff filed his first grievance on April 17, 2005, regarding the law library callout denied to him by Defendant Mahunik.  Dkt. No. 23, Linares Affirm., Ex. B, Grievance, dated Apr. 17, 2005.  This grievance was reviewed by Superintendent Burge on April 29, 2005, who found that the complaint was investigated, that there was no evidence to support the claim, and that the accused staff member denied the misconduct.[6]  *Id.*, Ex. B, Superintendent's Review, dated Apr. 29, 2005. Defendant Burge denied the grievance.  *Id.*  Plaintiff appealed to the Central Office Review Committee ("CORC"), which denied Plaintiff's grievance and upheld the Superintendent's determination based on the same reasoning.  *Id.*, Ex. B, CORC Review, dated June 1, 2005.  In fact, the CORC noted that the facility records indicated that Plaintiff did not attend the law library call "because he had a visit."  *Id.*

Plaintiff filed his second grievance on April 27, 2005, stating that Defendant Mahunik threatened him by claiming he found another knife in Plaintiff's cell, and asking that the verbal harassment cease.  *Id.*, Ex. C., Grievance, dated Apr. 27, 2005.  Plaintiff stated the threat occurred after Mahunik had testified at a hearing based upon a misbehavior report filed against Plaintiff by Mahunik.  *Id.*  On May 5, 2005, Superintendent Burge denied the grievance stating that the complaint was investigated, there was no evidence to support the claim, and the accused staff member denied the misconduct.[7]  *Id.*, Ex. C, Superintendent's Review, dated May 5, 2005.  Plaintiff appealed to the CORC and on June 22, 2005, the CORC denied Plaintiff's grievance and upheld the Superintendent's determination, once again based on the same reasoning.  *Id.*, Ex. C, CORC

---

[6] The results of the Inmate Grievance Resolution Committee's ("IGRC") investigation were not provided to this Court.

[7] The results of the IGRC investigation were not provided to this Court.

Review, dated June 22, 2005.

Since filing of grievances is constitutionally protected conduct, *Graham v. Henderson*, 89

F.3d 75, 80 (2d Cir. 1996) (citing *Franco v. Kelly*, 854 F.2d at 589); *Wheeler v. Goord*, 2005 WL

2180451, at *9, Plaintiff would next have to show the filing of the grievance was a substantial and

motivating factor for any adverse action taken and that there was a causal connection.  The

following events occurred after the filing of both grievances which are in proximity to the filings:

1) on April 18, 2005, a misbehavior report was issued to Plaintiff for violating the Department of

Correctional Services ("DOCS") rule against having a weapon, which came as a result of a cell

search on the previous day conducted by Mahunik, and after a hearing, Plaintiff was found not

guilty of the charge; 2) on April 27, 2005, Defendant Mahunik "stated in a threatening manner" in

front of Plaintiff's cell that he believed another knife was in Plaintiff's cell; and 3) on May 3, 2005,

Mahunik verbally threatened Plaintiff and told him not to attend the law library callout or write any

more grievances.  Pl.'s Mem. of Law at pp. 5-8; Linares Affirm., Ex. C., Grievance, dated Apr. 27,

2005.

At this juncture, it is possible that the April 17, 2005 grievance could have been a substantial

or motivating factor for the adverse action taken, the issuing of a misbehavior report on April 18,

and that there was a connection between the filing of the grievance against Mahunik and the

misbehavior report written the next day due to the temporal proximity of filing of the grievance and

the search of the cell as well as the issuance of the misbehavior report.  Plaintiff was also found not

guilty, another factor which could also infer an improper retaliatory motive.

Turning to the other incidents, it is also possible that the grievances filed on April 17 and 27,

2005, could be considered a substantial and motivating factor for the threats allegedly occurring on

*-17-*

April 27, 2005, and May 3, 2005.  The temporal proximity of the threats to the filing of the

grievances provides some circumstantial evidence of a retaliatory intent.  *See, e.g. Baskerville v.*

*Blot*, 224 F. Supp. 2d 723, 733 n. 6 (S.D.N.Y. 2002).  Furthermore, the threats could be viewed as

adverse actions as they may deter a similarly situated inmate of ordinary firmness from exercising

his constitutional rights.

Taking the threats in conjunction with the misbehavior report issued, Plaintiff raises at least

a "colorable suspicion of retaliation" entitling him to at least some discovery on the issue.  *Flaherty*

*v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) (describing three methods of pleading retaliation, each

requiring separate analysis).  Moreover, because of the stage of the litigation and the nature of this

Motion, Defendants have not been permitted to put forth any evidence or provide an explanation

that they would have taken the same action in the absence of the Linares's filing of the grievance.

Consequently, Plaintiff has alleged a retaliation claim thus far.

Therefore, it is recommended that the Motion to Dismiss be **denied** as to the retaliation

claims.

### E.  Supervisory Liability

Plaintiff states that Superintendent Burge is liable because he denied Plaintiff's grievances

regarding Defendant Mahunik's conduct and that he did not remedy the situation with Defendant

Mahunik.  Am. Compl. at p. 8; Pl.'s Mem. of Law at pp. 4-5.

The Second Circuit has held that "personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Hernandez v.*

*Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

1994)).  "'Absent some personal involvement by [the supervisory official] in the allegedly unlawful

*-18-*

conduct of his subordinates,' he cannot be liable under section 1983." *Hernandez v. Keane*, 341 F.3d 137, 144-45 (2d Cir. 2003) (quoting *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987)) (alterations in original).  However, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Id.* at 145 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)) (further citations omitted).

Here, Plaintiff does not allege that Defendant Burge was personally involved in any of the alleged violations.  Am. Compl. at p. 8; Pl.'s Mem. of Law at pp. 4-5.  Plaintiff generally alleges that Burge did not remedy the situation with Mahunik after being informed of the law library incident and retaliation claims through the grievance process.  Am. Compl. at p. 8; Pl.'s Mem. of Law at pp. 4-5.  In regards to the law library claim, Plaintiff cannot sustain a supervisory liability claim as there was no wrong for Burge to remedy since there is no constitutional violation.  *See supra* Part II.D.2.  However, as Plaintiff's retaliation claims are still viable at this stage, it is possible that Burge may be liable for failing to remedy that wrong.  *See supra* Part II.D.3.

Therefore, it is recommended that the Motion to Dismiss be **denied** as to the surviving retaliation claims.

### F.  Failure to Investigate

Plaintiff claims that Defendant McLaughlin, of the Inspector General's Office, failed to conduct a separate investigation into Plaintiff's complaints regarding Defendant Mahunik, and instead referred them to Defendant Burge.  Am. Compl. at pp. 8-9.

A "plaintiff does not have a constitutional right to an investigation[,]" unless the omission or

inadequacy of the investigation itself resulted in a deprivation of a constitutional right. *Faison v. Hash*, 2004 WL 944523, at *2 (W.D.N.Y. Apr. 23, 2004) (citing *Malloy v. City of New York,* 1996 WL 648927 at *2 (S.D.N.Y. Nov. 7, 1996) ("holding that warden's alleged failure to investigate assault by correctional officer did not give rise to constitutional violation, where plaintiff failed to show that warden could have anticipated or had other direct involvement in the assault") & *Gomez v. Whitney*, 757 F.2d 1005 (9th Cir. 1985) (holding that plaintiff's claim of inadequate investigation that did not cause a deprivation of a constitutional right does not state a claim under § 1983)); *see also Scher v. Chief Postal Inspector,* 973 F.2d 682, 683 (8th Cir. 1992) (stating that there was no constitutional right to have a plaintiff's complaints regarding mail tampering investigated). This premise also applies to investigation of grievances as there is no federal right to have them properly administered unless some liberty interest is involved. *Faison v. Hash*, 2004 WL 944523, at *3 (citing *Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119 (1977); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994); *Ramirez v. Holmes*, 921 F. Supp. at 208; & *Sandin v. Conner,* 515 U.S. 472, 474 (1995)).

In this case, Defendant McLaughlin, although not conducting an investigation himself, still referred that duty to Defendant Burge. Even so, Plaintiff has no constitutional right to an investigation. Additionally, the only way Plaintiff would have that right is if the omission or inadequacy of the investigation itself resulted in a deprivation of a constitutional right. Here, the omission or inadequacy of an investigation would not result in a deprivation of any of Plaintiff's constitutional rights. Plaintiff merely seeks to have some sort of disciplinary action taken against

Defendants Mahunik and Burge through the complaint sent to Defendant McLaughlin.[8]  Pl.'s Mem.

of Law at p. 5.

Therefore, it is recommended that the Motion to Dismiss be **granted**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Motion to Dismiss (Dkt. No. 22) be **GRANTED IN PART**

**and DENIED IN PART**, consistent with this opinion in the following manner:

1.  Defendant's request for dismissal pursuant to Federal Rules of Civil Procedure 8

and 10 is **denied**.

2.  All claims against Defendants in their official capacities are **dismissed**.

3.  Plaintiff's First Amendment claim based upon free exercise is **dismissed**.

4.  Plaintiff's First Amendment claim based upon access to the law library is **dismissed**.

5.  Plaintiff's First Amendment claims against Defendant Mahunik based on

retaliation remain intact.

6.  Plaintiff's supervisory liability claim relating to the retaliation claims against

Defendant Burge remains intact; Plaintiff's supervisory claim against Defendant

Burge for access to the law library is **dismissed**.

7.  Plaintiff's failure to investigate claim against McLaughlin is **dismissed**; and it is further

**RECOMMENDED**, that should the above be adopted by the District Judge, Defendants

Mahunik and Burge shall submit an answer to the Amended Complaint within twenty (20) days of

---

[8] Additionally, Plaintiff does not allege any personal involvement by Defendant McLaughlin nor can he claim supervisory liability as he does not state whom McLaughlin supervises. *See* Am. Compl.  Thus, alternatively, dismissal would be recommended on this ground.

the District Judge's decision on this Report-Recommendation; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).


Date:   August 10, 2006
        Albany, New York




_____
RANDOLPH F. TREECE
United States Magistrate Judge