**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JORGE LINARES,

                                 Plaintiff,

        - v -                                            Civ. No. 9:05-CV-625
                                                                   (GTS/RFT)[1]

DAVID MAHUNIK, JOHN BURGE,

                                 Defendants.

**APPEARANCES:**                                  **OF COUNSEL:**

JORGE LINARES
Plaintiff, *Pro Se*
96-A-3483
Cape Vincent Correctional Facility
Rte. 12E
Box 599
Cape Vincent, NY 13618

HON. ANDREW M. CUOMO                    HEATHER R. RUBINSTEIN, ESQ.
Attorney General for the State of New York     Assistant Attorney General
Attorney for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

     *Pro se* Plaintiff Jorge Linares brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that the Defendants violated his constitutional rights. In a Report-Recommendation and Order dated August 10, 2006, this Court recommended that the Defendants' Motion to Dismiss be denied in part and granted in part. Dkt. No. 28. The Honorable Gary Sharpe, United States District

---

[1] By an Order dated October 1, 2008, the Honorable Norman A. Mordue, Chief United States District Judge for the Northern District of New York, reassigned this case to the Honorable Glenn T. Suddaby. Dkt. No. 64.

Court Judge, adopted that Report-Recommendation in its entirety, leaving the following claims to be adjudicated: (1) retaliation in violation of the First Amendment on the part of Defendant David Mahunik, and (2) supervisory liability on the part of Defendant John Burge. Dkt. No. 31.

Mahunik and Burge now bring this Motion for Summary Judgment, which Plaintiff opposes. Dkt. Nos. 70-71. For the reasons that follow, it is recommended that the Defendants' Motion be **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

With respect to his remaining retaliation claim,[2] Plaintiff alleges that while incarcerated at the Auburn Correctional Facility ("Auburn"), Defendant Mahunik retaliated against him because Plaintiff filed two grievances against him. Dkt. No. 9, Am. Compl. Plaintiff states that he filed a grievance against Mahunik on April 17, 2005, because Mahunik prevented him from going on his law library call-out and planted a weapon in Plaintiff's cell on that date. *Id*. at p. 5; Dkt. No. 70, Defs.' 7.1 Statement, Ex. C, Grievance, dated Apr. 17, 2005. On April 17, 2005, Mahunik wrote a Misbehavior Report against Plaintiff for possession of contraband, a charge that was subsequently dismissed at a disciplinary hearing that began on April 21 and ended on April 28, 2005. Dkt. No. 70, Defs.' 7.1 Statement, Exs. B, Misbehavior Rep., dated Apr. 17, 2005 & C, Disciplinary Hr'g Decision, dated Apr. 21- 28, 2005. Plaintiff filed another grievance against Mahunik on April 27, 2005, alleging that Mahunik had threatened him on that date. Plaintiff also alleges that Mahunik threatened him again on May 3, 2005. Am. Compl. at pp. 4-9. With respect to Defendant Burge, Plaintiff alleges that he is liable because he denied Plaintiff's grievances regarding Mahunik's conduct and failed to remedy the situation. *Id.* at pp. 8-9.

---

[2] For a complete summary and analysis of all of Plaintiff's original claims, reference is made to the previously issued Report-Recommendation and Order addressing Defendants' Motion to Dismiss. Dkt. No. 28.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "'pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any,'" that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts showing [that there is ]a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.

*Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B. Failure to Exhaust

Defendants assert that Plaintiff failed to properly exhaust the administrative remedies available to him prior to bringing this suit. Dkt. No. 70, Defs.' Mem. of Law at pp. 5-12. The Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997(e)(a), states that "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004).

The New York State Department of Corrections (DOCS) has created a three-step grievance process known as the Inmate Grievance Program (IGP). *See Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004). First, the inmate must file a grievance complaint with the Grievance Clerk within twenty-one (21) days of the incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1). The complaint is then submitted to the Inmate Grievance Resolution Committee (IGRC) to review the grievance. *Id.* at § 701.5(b). Second, if the inmate disagrees with the IGRC decision, then the inmate may appeal to the Superintendent. *See id.* at § 701.5(c). Third, if the inmate disagrees with the Superintendent's determination, an appeal may be taken to the Central Office Review Committee (CORC) who renders a final administrative determination. *Id.* at § 701.5(d). Upon the completion of all three steps, an inmate may "seek relief pursuant to 42 U.S.C. § 1983." *Colon v. Harvey*, 344 F. Supp. 2d 896, 897 (W.D.N.Y. 2004) (*citing Neal v. Goord* 267 F.3d 116, 122 (2d Cir. 2001) & *Santos v. Hauck*, 242 F. Supp. 2d 257, 259 (W.D.N.Y. 2003)).

In this case, the record shows that Plaintiff filed two grievances related to the instant action.[3] The first grievance, dated April 17, 2005, was received by the IGRC on April 21, 2005, and alleged that Mahunik refused to allow Plaintiff to attend a law library call-out on April 17th, cancelled Plaintiff's call-out to the media center on April 16th, and planted a shank in Plaintiff's cell on the 17th. Dkt. No. 70, Defs.' 7.1 Statement, Ex. C, Grievance, dated Apr. 17, 2005. The IGRC

---

[3] Plaintiff admitted in his deposition that he filed only two grievances related to the instant claims. Dkt. No. 70, Defs.' 7.1 Statement, Ex. E, Pl.'s Dep., dated Nov. 26, 2007, (hereinafter "Pl.'s Dep.") at p. 133.

apparently dismissed Plaintiff's grievance,[4] and the Superintendent subsequently found Plaintiff's allegations to be without merit. *Id.*, Ex. C, Sup't Decision, dated Apr. 29, 2005. Plaintiff appealed the Superintendent's decision to the CORC, which also denied his grievance. *Id.*, Ex. C, CORC Decision, dated June 1, 2005.

Plaintiff's second grievance, dated April 27, 2005, was received by the IGRC on May 3, 2005. *Id.*, Ex. D, Grievance, dated Apr. 27, 2005. In it, Plaintiff alleged that on April 27th, Mahunik "was call[ed] as a witness at grievant's hearing as the author of a misbehavior report. Later that afternoon . . . [Mahunik] came to grievant's cell and stated in a threatening manner: 'Gee, I think I see another knife in there.' Mahunik is the subject of another grievance filed on April 17, 2005 and received on April 21, 2005." *Id.* Plaintiff requested that Mahunik stop approaching him and making threats to him. *Id.* The Superintendent found Plaintiff's allegations to be without merit.[5] *Id.*, Ex. D, Sup't Decision, dated May 5, 2005. Plaintiff appealed to the CORC, which upheld the Superintendent's decision. *Id.*, CORC Decision, dated June 22, 2005.

Thus, Plaintiff appealed his grievances to their administrative ends. However, Defendants contend that Plaintiff "did not present the facts of this action to the grievance program," and that "[t]here is no evidence that plaintiff filed any grievances, or complained to any prison authorities, nor exhausted those remedies using the administrative appeal process, with regard to the actions of defendants on April 17 and 18, 2005 or May 3, 2005." Defs.' Mem. of Law at p. 10.

Defendants are correct that there is no evidence on the record that Plaintiff utilized the formal grievance process with regards to his allegation that Mahunik threatened him on May 3, 2005.

---

[4] A copy of the IGRC's decision was not found in the record.

[5] Again, the IGRC apparently denied Plaintiff's grievance, though there is no evidence of that denial in the record.

However, Plaintiff has alleged that on May 3rd, he wrote a complaint to Deputy Superintendent of Programs Ronald Nelson about Mahunik's alleged threats, a copy of which is available in the record. Defs.' 7.1 Statement, Ex. E, Lt., dated May 3, 2005. Plaintiff stated in his Amended Complaint that his complaint to Nelson was still being investigated, but beyond that statement, there is nothing in the record addressing what became of that complaint. Am. Comp. at p. 8. Also in his Amended Complaint, Plaintiff states that in addition to the two grievances he filed, he submitted a complaint, dated April 21, 2005, to the DOCS Inspector General's Office, and a follow-up letter, dated May 5, 2005, to that same office. *Id.* at pp. 8-9. Neither of those letters have been provided to the Court by either side, however, Plaintiff asserts that a separate investigation was never conducted because the complaints were referred by the Inspector General's Office to Defendant Burge. *Id.*

Putting the ambiguities about the fate of these complaints aside, generally speaking, letters of complaint to DOCS officials do not satisfy the PLRA's exhaustion requirements. *See Woodford v. Ngo,* 548 U.S. 81, 95 (2006) (holding that the PLRA requires "proper exhaustion," meaning compliance with an agency's critical procedural rules and deadlines); *see also Harrison v. Goord,* 2009 WL 1605770, at *8 (S.D.N.Y. June 9, 2009) (sending letters and making oral complaints doesn't "cut the mustard so as to satisfy the strict exhaustion requirement" of the PLRA) (citations omitted); *Houze v. Segarra*, 217 F. Supp. 2d 394, 395-96 (S.D.N.Y. 2002) (plaintiff who wrote letters to the Superintendent and whose family members contacted the Inspector General's office did not properly exhaust administrative remedies); *Boddie v. Bradley*, 228 Fed. Appx. 5, 1 (2d Cir. Feb. 16, 2006) (unpublished opinion) (affirming that letters sent "directly to DOCS official are not, on their own, sufficient to meet the § 1997(e)(a) exhaustion requirement."). Further, Plaintiff has not alleged any "special circumstances" that would justify his failure to properly exhaust, nor that

the Defendants should be estopped from asserting this affirmative defense, nor that administrative remedies were unavailable to him.[6] *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004). Indeed, given that Plaintiff filed two formal grievances regarding Mahunik's actions, he was well aware of how the grievance procedure worked and how to utilize it. Therefore, Plaintiff's claim that Mahunik retaliated against him on May 3, 2005, has not been properly exhausted and should therefore be **dismissed**.

However, Plaintiff's first grievance accuses Mahunik of planting a shank in his cell on April 17th, and his second grievance accuses Mahunik of improperly threatening him on April 27th, 2005. *See* Defs.' 7.1 Statement, Exs. C, Grievance, dated Apr. 17, 2005 & D, Grievance, dated Apr. 27, 2005. Although Plaintiff does not use the word "retaliation" in either of his grievances, when read in their entirety, both grievances suggest that the actions alleged to have been taken by Mahunik were done with retaliatory motives. In his April 17th grievance, Plaintiff states that when he voiced a complaint about Mahunik's denial of his law library call-out, Mahunik said that "if he complained he would be locked up on trumped up charges." *Id*., Ex. C, Grievance, dated Apr. 17, 2005. Plaintiff also alleged in that grievance that Mahunik had "a personal problem with grievant and has made veiled threats in the past." *Id.* In his April 27th grievance, Plaintiff referenced the fact that Mahunik was called to testify in his disciplinary hearing as the author of the allegedly false

---

[6] In *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), the Second Circuit established a three-part inquiry that courts must undertake when a plaintiff "plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA." Under that test, a reviewing court must ask whether (1) administrative remedies were in fact "available" to the prisoner; (2) defendants have forfeited the affirmative defense due to their failure to preserve or by inhibiting the prisoner's efforts to exhaust; and (3) special circumstances exist that would justify an inmate's failure to exhaust. 308 F.3d at 686. After the Supreme Court's holding in *Woodford v. Ngo*, 548 U.S. 81, 95 (2006) that the PLRA requires "proper exhaustion," it is unclear whether the test annunciated in *Hemphill* is still binding on this Court. *See, e.g., Houston v. Goord*, 2009 WL 890658, *10 n.8 (N.D.N.Y. Mar. 31, 2009) (noting that this issue has been a matter of speculation and citing cases). However, we need not address that issue because it is clear that Plaintiff does not pass the aforementioned three-part test with respect to his allegations concerning the events of May 3, 2005.

Misbehavior Report dated April 17th, and that Mahunik was "the subject of another grievance filed on April 17, 2005." *Id*., Ex. D, Grievance dated Apr. 27, 2005. Thus, Plaintiff's grievances were sufficiently detailed to put prison officials on notice of his claims and to allow them to make an appropriate response. *See Varela v. Demmon*, 491 F. Supp. 2d 442, 448 (S.D.N.Y. 2007) (plaintiff's claims were properly exhausted even though he did not use the word "retaliation" in his grievance); *see also Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) ("[I]f prison regulations do not prescribe any particular content for inmate grievances, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate the legal theories, or demand particular relief.") (citation and internal quotation marks omitted)

Therefore, we find that Plaintiff's claims regarding the allegedly retaliatory actions taken by Mahunik on April 17 and 27, 2005, have been properly exhausted, and we therefore recommend against dismissal for failure to exhaust.

### C. Retaliation

Plaintiff's remaining retaliation claims are that Mahunik (1) planted a shank in his cell on April 17, 2005; (2) wrote a false Misbehavior Report against him on April 17, 2005; and (3) threatened to plant another weapon in his cell on April 27, 2005. Am. Compl. at pp. 4-9.

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854

F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted). Thus, there must be a "causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d at 138-39 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). Other factors that can infer an improper or retaliatory motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff. *McEachin v. Selsky*, 2005 WL 2128851, at *5 (N.D.N.Y. Aug. 30, 2005) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)).

Moreover, "in the prison context [the Second Circuit has] previously defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (emphasis in original). This objective test will

*-10-*

apply even though a particular plaintiff was not himself deterred. *Id.* If the plaintiff can carry that burden, the defendants will still be entitled to summary judgment if they can show, by a preponderance of the evidence, that they would have taken the same action in the absence of the prisoner's First Amendment activity. *Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999); *see Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).

The Supreme Court has noted that the right to petition government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *See United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). The Second Circuit has held that within the prison context, "inmates must be 'permit[ted] free and uninhibited access . . . to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers.'" *Franco v. Kelly*, 854 F.2d at 589 (quoting *Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir. 1976)) (emphasis and alterations in original).

As previously discussed, Plaintiff filed two grievances concerning his retaliation claims against Mahunik. The first grievance, dated April 17, 2005, accused Mahunik of, *inter alia*, planting a shank in his cell on that date. That alleged retaliatory action could not possibly have been motivated by Plaintiff's first grievance, which was necessarily filed after the alleged planting of the weapon occurred. In his Response to the Defendants' Motion, Plaintiff asserts that Mahunik was motivated to plant the shank by prior informal complaints Plaintiff made about Mahunik to the Coordinating Chaplain, Deacon John Tomandle. Pl.'s Resp. at p. 5. However, Plaintiff does not explain how such complaints became known to Defendant Mahunik prior to the April 17th incidents, nor is there any indication on the record that Mahunik knew of such complaints. Therefore, Plaintiff

has failed to demonstrate a causal connection between his complaints, both informal and formal, and Mahunik's alleged planting of the shank.

With respect to the Misbehavior Report Mahunik penned on April 18th, that report also could not have been motivated by Plaintiff's April 17th grievance as such grievance was not received by the IGRC until April 21st. Defs.' 7.1 Statement, Ex. C, Grievance, dated Apr. 17, 2005 (stamped received on Apr. 21, 2005). Plaintiff has offered no evidence, and in fact does not allege, that Mahunik was made aware of his first grievance prior to the IGRC's receipt of it on April 21st, three days after Mahunik filed the allegedly false Misbehavior Report on April 17th. *Id.*, Ex. B, Misbehavior Rep., dated Apr. 17, 2005. Plaintiff stated in his deposition that grievances were filed by dropping a sealed envelope containing the grievance into an internal mailbox. Pl.'s Dep. at pp. 66-67. He also stated that he believed Mahunik found out about his grievances through the internal investigations into those complaints undertaken by Mahunik's supervisors. *Id.* at pp. 133-34. However, such investigations would not have occurred prior to the receipt of the grievances themselves by the IGRC, and therefore, could not have been the motivating factor behind Mahunik's April 17th Misbehavior Report.

To the extent Plaintiff suggests that Mahunik was motivated by his informal complaints to the Chaplain, as discussed above, there is nothing in the record to substantiate such allegation. *See* Pl.'s Dep. at pp. 61-63 (Plaintiff stating he had no idea where Mahunik's behavior stemmed from, and then suggesting that it was possibly because of his underlying criminal conviction). Therefore, it is recommended that Plaintiff's claim that Mahunik retaliated against him by planting a shank on April 17th and writing a false Misbehavior Report against him on April 17th be **dismissed**.

Plaintiff's final retaliation claim is that on April 27, 2005, Mahunik threatened to plant

another weapon in his cell. Am. Compl. at p. 7. In our previous Report-Recommendation, we stated that "it is also possible that the grievances filed on April 17 and 27, 2005, could be considered a substantial and motivating factor for the threats allegedly occurring on April 27, 2005, and May 3, 2005. The temporal proximity of the threats to the filing of the grievances provides some circumstantial evidence of a retaliatory intent." Dkt. No. 28, Report-Recommendation and Order, dated Apr. 10, 2007, at p. 17. Although we have recommended dismissal of Plaintiff's allegations relating to the events of May 3, 2005, on failure to exhaust grounds, Plaintiff's allegation that Mahunik threatened him on April 27, 2005, is not recommended for dismissal on that basis. Defendants have not addressed the merits of this claim in their Motion for Summary Judgment, and therefore, this claim should survive the instant Motion. *See generally* Defs.' Mem. of Law. at pp. 3-5.

We pause simply to reaffirm our prior conclusion, adopted in full by Judge Sharpe, that Plaintiff has stated a viable retaliation claim regarding Mahunik's alleged threats on April 27, 2005. First, Plaintiff has alleged that he was engaged in protected conduct when he filed a grievance against Mahunik on April 17th, which was received on April 21st. In that grievance, Plaintiff accused Mahunik of, *inter alia*, planting a shank in his cell. Plaintiff was subsequently found innocent of the charges brought in Mahunik's April 17th Misbehavior Report at a disciplinary hearing held on April 21-28th, at which Mahunik testified. Defs.' 7.1 Statement, Ex. C, Disciplinary Hr'g Decision, dated Apr. 21-28, 2005. Second, Plaintiff has alleged that Mahunik took retaliatory actions against him by threatening to place another weapon in his cell on April 27, 2005. Third, given the fact that Plaintiff was found innocent of the infraction alleged by Mahunik, and given also the temporal proximity between the alleged threats and the date Plaintiff filed his first grievance, Plaintiff has

raised a plausible claim of a causal connection between the protected conduct and the alleged adverse action taken.

Therefore, because Defendants have not addressed the merits of this claim, it is recommended that summary judgment be **denied** on this claim.[7]

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 70) be **DENIED in part** and **GRANTED in part** in accordance with the above; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

---

[7] Neither did the Defendants address the merits of Plaintiff's supervisory liability claims against John Burge. Therefore, those claims should survive the present Motion as well.

Date:   July 16, 2009
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge