UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JORGE LINARES,

                        Plaintiff,

v.                                                   9:05-CV-0625
                                                   (GTS/RFT)
DAVID MAHUNIK; and JOHN BURGE,

                        Defendants.
_____

APPEARANCES:                                               OF COUNSEL:

LYNN LAW FIRM                                         THOMAS F. SHANNON, ESQ.
  Counsel for Plaintiff
M&T Bank Building
101 South Salina Street, Suite 802
Syracuse, NY 13202

HON. ANDREW M. CUOMO                      HEATHER R. RUBINSTEIN, ESQ.
Attorney General for the State of New York       Assistant Attorney General
  Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

       On February 24, 2010, the Court held a non-jury trial in this prisoner civil rights action filed by Jorge Linares ("Plaintiff").[1] At the conclusion of the non-jury trial, the Court directed the parties to submit proposed findings of fact and conclusions of law, and indicated that a written decision would follow their submissions. This is that written decision. For the reasons set forth below, the Court finds that Plaintiff failed to prove, by a preponderance of the evidence,

---

[1] Prior to trial, Plaintiff waived his right to a jury trial. (*See* Dkt. No. 97.)

that David Mahunik and John Burge ("Defendants") violated his constitutional rights.

## I.     RELEVANT ISSUES AT TRIAL

On September 29, 2009, this Court issued a Decision and Order granting in part and denying in part the then-named Defendants' motion for summary judgment. *Linares v. Mahunik*, 05-CV-0625, 2009 WL 3165660 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J., adopting Report-Recommendation of Treece, M.J.). As a result of that Decision and Order, two triable issues remained, which were tried before the Court on February 24, 2010: (1) Plaintiff's First Amendment retaliation claim against Defendant Mahunik; and (2) Plaintiff's supervisory liability claim against Defendant Burge.

## II.    FINDINGS OF FACT

On or before April 17, 2005, Plaintiff was confined to Auburn Correctional Facility. On April 17, 2005, at approximately 4:30 p.m., Defendant Mahunik searched Plaintiff's cell, because he received information from a confidential informant that Plaintiff had contraband in his cell, and was directed to search Plaintiff's cell by his area sergeant. During the search, Defendant Mahunik located a knife. Later that day, two things happened: (1) Defendant Mahunik authored and signed an Inmate Misbehavior Report against Plaintiff; and (2) Plaintiff handed to a correctional officer, for mailing, an administrative grievance against Defendant Mahunik alleging, among other things, that Mahunik planted a weapon in his cell. On April 18, 2005, Plaintiff was served with Defendant Mahunik's Inmate Misbehavior Report. On or about April 21, 2005, the Inmate Grievance Record Coordinator ("IGRC") received Plaintiff's administrative grievance. On April 21, 2005, Plaintiff's disciplinary hearing based on the Inmate Misbehavior Report began.

2

On April 27, 2005, Defendant Mahunik testified at Plaintiff's disciplinary hearing. Later that day, Plaintiff filed another grievance against Defendant Mahunik, alleging that Mahunik had threatened him that day in retaliation for having to testify (as a compelled witness) at Plaintiff's disciplinary hearing.[2]

On April 28, 2005, Ronald Nelson, Deputy Superintendent of Programs (which is a non-security position) completed Plaintiff's disciplinary proceeding, and dismissed the disciplinary charges against Plaintiff. On April 29, 2005, Defendant Burge underwent a substantive review of Plaintiff's administrative grievance of April 21, 2005. On April 29, 2005, Defendant Burge was unaware of the disposition of the disciplinary proceeding rendered on April 28, 2005. In addition, when Defendant Burge was conducting a substantive review of Plaintiff's administrative grievance of April 21, 2005, he had no reason to believe that Defendant Mahunik had participated in any retaliatory conduct on April 27, 2005.

### III.  CONCLUSIONS OF LAW

"To sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Islam v. Goord*, 05-CV-7502, 2006 WL 2819651, at *4 (S.D.N.Y. Sep.29, 2006) (quoting *Gill v. Pidlypchack*, 389 F.3d 379, 380 [2d Cir. 2004]) (other citation omitted). "Courts 'must approach prisoner claims of retaliation with skepticism

---

[2]  More specifically, Plaintiff testified at trial that, after concluding his testimony at Plaintiff's disciplinary hearing, Defendant Mahunik had come to his cell and told him, in sum and substance, "Jeez, I think I see another knife in your cell." (Trial Tr. at 50; Tr. Ex. 16.) In response to this trial testimony, Defendant Mahunik testified at trial that he did not visit Plaintiff at his cell on April 27, 2005. (Trial Tr. at 23, 25-26.)

and particular care' because such claims are easily fabricated and may cause unwarranted judicial interference with prison administration." *Islam*, 2006 WL 2819651, at *4 (quoting *Dawes v. Walker*, 239 F.3d 489, 491 [2d Cir. 2001], *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 [2002]).

With regard to the first prong, the filing of a prison grievance is a constitutionally protected activity for purposes of the First Amendment. S*ee Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002). Here, the record clearly establishes that Plaintiff mailed a grievance on April 17, 2005, which was filed by the IGRC on April 21, 2005. As a result, Plaintiff's filing of a grievance of April 21, 2005, was constitutionally protected activity. Moreover, the Court assumes, for the sake of argument, that Plaintiff's conduct in actively and successfully defending himself at his disciplinary hearing constituted protected activity.[3]

With regard to the second prong, "an adverse action is defined as one 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Islam*, 2006 WL 2819651, at *5 (quoting *Gill*, 389 F.3d at 380) (other citation omitted). "The test is an objective one that applies even if the plaintiff in question was not himself subjectively deterred." *Id*. (citations omitted). "This objective inquiry is 'not static across contexts,' but rather must be 'tailored to the different circumstances in which retaliation claims arise.'" *Dawes*, 239 F.3d at 493 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 [6th Cir. 1999]).

---

[3] *See Shaheen v. McIntyre*, 05-CV-0173, 2007 WL 3274835, at *10 (N.D.N.Y. Nov. 5, 2007) (McAvoy, J. adopting Lowe, M.J.) ("While I have not found many cases addressing the issue, I will assume for the sake of argument that *actively* and *successfully* challenging a charge contained in a misbehavior report, during a prison disciplinary hearing, is "protected" conduct or speech under the First Amendment.") [emphasis in original; citations omitted].

"Moreover, in considering what constitutes adverse action, a court should be mindful that prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Islam*, 2006 WL 2819651, at *5 (quoting *Davis v. Goord*, 320 F.3d 346, 493 [2d Cir. 2003]). "If the action would not deter an individual of ordinary firmness the retaliatory act 'is simply *de minimis* and therefore outside the ambit of constitutional protection.'" *Id*. (quoting *Davis*, 320 F.3d at 353).

Here, Plaintiff testified that Defendant Mahunik came to his cell at approximately 6:00 p.m. on April 27, 2005, and stated, in sum and substance, "Jeez, I think I see another knife in your cell." (Trial Tr. at 50; Tr. Ex. 16.) Conversely, Defendant Mahunik testified that he "never approached [Plaintiff] in his cell after the [April 17, 2005] incident." (Trial Tr. at 23, 25-26.) Based on the demeanor of these two witnesses, and the substance of their trial testimony, the Court finds that Plaintiff did not prove, by a preponderance of the evidence, that he was threatened by Defendant Mahunik on April 27, 2005. In any event, even if the Court were to credit Plaintiff's trial testimony over Defendant Mahunik's trial testimony, the Court could not conclude that Defendant Mahunik's statement, in and of itself, would deter an individual of ordinary firmness from filing future grievances. This is because "[t]hreats made to an inmate, without more, do not rise to the level of a constitutional violation." *Pledger v. Hudson*, 99-CV-2167, 2005 WL 736228, at *5 (S.D.N.Y. Mar. 31, 2005).[4] For each of these alternative reasons,

---

   [4]   *See also Hill v. Chalanor*, 128 F. App'x 187, 189 (2d Cir. April 15, 2005) (affirming district court's dismissal of plaintiff's retaliation claim because "[t]he alleged threats made by defendant . . ., without any allegation that the latter carried through on those threats, did

the Court finds that Plaintiff has failed to satisfy the second prong of his retaliation cause of action, i.e., that adverse action was taken against him.

Finally, because the Court concludes that Plaintiff failed to prove, by a preponderance of the evidence, that Defendant Mahunik retaliated against him in violation of his First Amendment rights, Defendant Burge cannot be held liable under a theory of supervisory liability.[5]

**ACCORDINGLY**, it is

**ORDERED** that the Plaintiff's Amended Complaint (Dkt No. 9) is hereby dismissed. The Clerk of the Court shall enter Judgment for Defendants and close this action.

Dated: March 24, 2010
    Syracuse, New York

*[signature]*
Hon. Glenn T. Suddaby
U.S. District Judge

---

not constitute adverse action"); *Bartley v. Collins*, 95-CV-10161, 2006 WL 1289256, at *6 (May 10, 2006) ("[V]erbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action."); *Alicea v. Howell*, 387 F. Supp.2d 227, 237 (W.D.N.Y. 2005) ("[Defendant's] alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] do not give rise to a First Amendment retaliation claim."); *Williams v. Muller*, 98-CV-5204, 2001 WL 936297, at *4 (S.D.N.Y. Aug. 17, 2001) (defendant's "alleged spreading of rumors [that] plaintiff claims . . . were intended to incite the inmates to harm plaintiff . . . do not give rise to a retaliation claim"); *Cruz v. Hillman*, 01-CV-4169, 2002 WL 31045864, at *7 (S.D.N.Y. May 16, 2002) (allegation that corrections counselor expressed his dislike for inmates who file civil lawsuits, and later came to plaintiff's cell and said "Green Haven is an open battlefield, so be careful" insufficient to state a retaliation claim).  The Court notes that Plaintiff's retaliation claim was not dismissed on this ground at the summary judgment stage, because, as noted by Magistrate Judge Treece in his thorough Report-Recommendation, Defendants failed to "address[] the merits of this claim in their motion for summary judgment."  (Dkt. No. 76. at 13.)

[5]     *Linares v. Mahunik*, 05-CV-0625, 2006 WL 2595200, at *11 (N.D.N.Y. Sept. 11, 2006) (Sharpe, J. adopting Treece, M.J.) ("In regards to the law library claim, Plaintiff cannot sustain a supervisory liability claim as there was no wrong for Burge to remedy since there is no constitutional violation.").